HENRY AGNE, Appellant, v. JACOB T. SLITSINGER.

|  96 | 181 |
| s104 | 484 |
|  96 | 181 |
| 117 | 367 |
|  96 | 181 |
| 126 | 337 |

**Easement:** DIRECTED VERDICT. It appears that plaintiff's grantor dedicated land for a road with an express reservation of the right to attach a fence to the bridge "which must necessarily be built across Rock run before said road can be made passable." A bridge which was thereafter built on the dedicated piece of road was not, strictly speaking, over Rock run or its main channel, and the petition so showed. It crossed a deep ravine where the ravine made a junction with the creek and some forty feet from a county bridge over Rock run. This county bridge was built when said dedication was made and was not necessary to make the new road passable. Both plaintiff and his grantor had for many years connected their fences with the bridge over the ravine and allowed their cattle to pass under it. These privileges were essential for pasturing purposes. It was charged that defendant in rebuilding the bridge, had maliciously destroyed said passage. The defendant insisted that said reservation applied to said county bridge and not to the one built and rebuilt over the ravine.

*Held,* it was error to direct a verdict for defendant on account of so construing the grant, especially as the question of identity was raised only on the introduction of testimony.

CONSTRUCTION.  A reservation of a right to attach a fence to a bridge
  6   includes the right to passage way for stock under the bridge,
       under the circumstances at bar.  60 N. W. Rep. 483, reversed on
       rehearing.                            .

*Appeal from Cedar District Court.*—HON. J. H. PRES-
TON, Judge.

WEDNESDAY, OCTOBER 23, 1895.

Action at law to recover damages from defendant
for maliciously destroying a cattle pass claimed by
plaintiff across and under a highway bridge in Cedar
county, Iowa.  There was a trial to a jury, and at the
conclusion of plaintiff's testimony the court directed
a verdict for defendant.  Plaintiff appeals.—*Reversed.*

*Isaac Landt* and *Wheeler & Moffit* for appellant.

*Robert G. Cousins* for appellee.

Deemer, J.—This is the third time this case has
been before us. . The opinion on the first appeal will be
found in 85 Iowa, 306 (52 N. W. Rep. 228).  On October
9, 1894, an opinion was filed on the second appeal,
which will be found in 60 N. W. Rep. 483, affirming the
judgment of the lower court.  A rehearing was
granted of this second appeal, and we are now to con-
sider the second appeal again.  The plaintiff is the
owner of contiguous parts of sections 5 and 8, in town-
ship 80, range 3, Cedar county, Iowa, which he occu-
pies and uses for agricultural purposes.  He purchased
the same of one Sem. Simmons.  In the year 1858,
Simmons being then the owner of the land, exe-
cuted and filed with the county judge an instrument
in words and figures as follows:  "To the County
Judge of Cedar County, Iowa:  A continuation of the
Old Littrel road, running north and south through the
center of sec. 5, township 80 N., range 3 west of the 5th

P. M., as seen in the above plat. The undersigned, owner of the east ½ N. W. quarter of section 8, town 80, range 3 west, agrees to donate ground for the pur- pose of establishing a public highway, being a con- tinuation of the above Littrel road, as follows: Com- mencing at the quarter post between sections 5 and 8, town and range as aforesaid; thence south, 18 degrees west 16 poles, more or less, to intersect the Moscow and Marion road; said continuation to be on the express condition, viz. that said owner reserve the right to attach a fence to the bridge which must necessarily be built across Rock run before said road can be made passable. [Signed] Sem. Simmons, Owner."

Upon the filing of this paper the county judge made of record the following order: "County Court, Sept. Term, A. D. 1858. Sem. Simmons' Road. On this day the agreement of S. Simmons, the owner of the land through which the road runs, was filed, together with a plat of same, whereupon the said road was established, and ordered to be recorded. The court then adjourned for the session. Geo. Smith,

County Judge." Thereafter the road so dedicated was opened, and a bridge was constructed across a ravine at its junction with Rock run, in such a manner as to admit of fences being attached to the bridge, and with ample space for stock to pass under the bridge. The bridge so constructed was thus maintained from 1858 to 1890, and plaintiff and his grantor had fences connected with the bridge, and continuously used the passageway for a cattle pass. In the summer of 1890 the bridge was washed out by a freshet, and the defendant, who was then road supervisor, being notified by certain citizens to repair the bridge, caused the same to be replaced. Plaintiff claims that defendant, although notified to replace the bridge as theretofore maintained, willfully, maliciously, and negligently reconstructed the same so as to deprive him of the privilege of connecting his fence therewith, and in such manner as to destroy the cattle pass thereunder. He avers that the right to a cattle pass is one of the incidents of the reservation in the grant, and is covered thereby, and that, if this be not true, he holds the same by a prescriptive right, by reason of his grantor having used and occupied the same under claim of right or color of title for more than thirty years. Defendant denies that plaintiff is entitled to a cattle pass under the bridge, and denies that he has replaced it so that plaintiff cannot attach fences thereto, or so as to destroy the passageway for cattle thereunder. He also avers that the reservation in the grant does not relate to the bridge in question, but to another bridge across Rock Run, some thirty or forty feet distant. The lower court seems to have adopted this last theory of defendant, and in accordance therewith directed a verdict for him.

I. It is true that the bridge as rebuilt was not, strictly speaking, across Rock run. Nor was the bridge, as originally built, across the main channel of

the brook. It did, however, cross a deep ravine at its junction with Rock run, and some thirty or forty feet from a county bridge over Rock run, on what is known as the "Moscow and Marion Road" as shown on the plat. The right reserved is "to attach a fence to the bridge which must necessarily be built across Rock run before said road can be made passable." Now, the evidence shows that the bridge on the Moscow and Marion road over the brook proper was built before the grant was made, and was not necessary to make the new road passable. The plaintiff attached his fence to the bridge in question, and not to the one over Rock run proper, and all parties evidently understood that the bridge in question was the one referred to in the grant. Moreover, the claim that the bridge in question is not the one referred to in the grant does not seem to be properly made in the pleadings. It was raised at the trial upon the introduction of the testimony, and there was nothing in the pleadings to indicate that there was any issue over the question of the identity of the bridge. The petition showed on its face that the bridge was not over Rock run proper, but over an arm of this stream, and the answer admits the allegations. No attack was made upon the petition upon this ground, and we do not think the question discussed, and upon which the case was decided in the lower court, was properly in the case. Having adopted this view, the lower court made many errors in the rejection of testimony which need not be specially pointed out, as the rulings, or many of them, seem to be predicated upon the theory that the bridge in question is not the one referred to in the grant.

II.    The right reserved is "to attach a fence to the bridge." Defendant contends that this does not cover or include the right to a cattle pass under the bridge. We may observe, in passing, that, if the construction

contended for be adopted, the court was in error in taking the case from the jury, because there was evidence that a fence could not be properly attached to the bridge as it was reconstructed; but we do not think the grant should be thus construed. It is familiar doctrine that in construing such instruments we must look to the circumstances attendant upon the transaction, the situation of the parties, and the state of the thing granted, to ascertain the intention of the parties; for it is the intent of the parties which should govern, where such intent can be determined by parol evidence without doing violence to some of the settled rules with reference to written instruments. *Craven v. Winter,* 38 Iowa, 479; *Corbett v. Berryhill,* 29 Iowa, 160. It is apparent that the right to attach fences to the highway bridge is, in and of itself a mere barren privilege, and we cannot presume that the parties had no beneficial use in view in reserving the easement. Rather will we assume that they had some valuable purpose in view in so doing. Turning to the evidence, we find that before the dedication by plaintiff's grantor there was a stream of running water upon this tract of land in section 8, which afforded water for his stock. The road dedicated by him would so cut up this land as to leave a part of it in section 8, so that stock pastured thereon could not get to water without passing over this road or under the bridge. The ravine was so deep that if a bridge were built over it equal in height to the banks of the stream there would be ample space to allow stock to pass and repass thereunder. The land immediately adjacent to the bridge, and on either side of it, was used by plaintiff and his grantor for pasturage purposes, and was so used at the time the grant was made, and this passageway was and is of value to the owner of the land. So far as we can discover, there was no other purpose in reserving the

right to attach the fence, and we think it was the purpose and understanding of the parties to afford a cattle pass under the bridge by the reservation made in the grant. The parties themselves placed this construction upon it, and no claim was made to the contrary until defendant went to replace the original bridge. There is nothing in the language of the grant which negatives this privilege, and we think it clearly appears that the reservation covers the cattle pass. As sustaining our conclusions, see *Karmuller v. Krotz*, 18 Iowa, 360, and the second part of the former opinion in 85 Iowa, at page 310 (52 N. W. Rep. 228).

III. We had occasion on the former appeal to consider the question as to plaintiff's rights by prescription (see paragraph 5 of the original opinion), and need only say at this time that there was sufficient evidence to take the case to the jury on this claim. The alleged adverse possession was open, actual, notorious, and under claim of right, and had ripened into a perfect easement before the adoption of section 2033 of the Code. See *Baldwin v. Herbst*, 54 Iowa, 168 (6 N. W. Rep. 257). The case should have gone to the jury under proper instructions from the court.—*Reversed.*